**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0080n.06

No. 10-1952

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 23, 2012*

LEONARD GREEN, Clerk

JOSEPH S. ROETTER; DIANE K. ROETTER,  )
                                            )

        Plaintiffs-Appellants,        )

                                            )      ON APPEAL FROM THE UNITED
     v.                           )      STATES DISTRICT COURT FOR
                                              )      THE WESTERN DISTRICT OF
MICHIGAN   DEPARTMENT   OF )      MICHIGAN
CORRECTIONS,                        )

                                            )
        Defendant-Appellee.        )

Before: SILER and KETHLEDGE, Circuit Judges; ADAMS, District Judge.[*]

ADAMS, District Judge. Appellants, Joseph and Diane Roetter, appeal the District Court's

grant of Appellee Michigan Department of Corrections' ("the MDOC") motion for summary

judgment on all claims. In their appeal, the Roetters assert that the district court erred when it

determined as a matter of law that the Mr. Roetter was not qualified to perform the essential

functions of his job. For the reasons set forth below, we AFFIRM the judgment of the District Court.

**I. Background**

The District Court accurately explained the factual background before it as follows:

Defendant first hired Plaintiff [, Joseph Roetter,] in 1989 to work at the Brooks
Correctional Facility in Muskegon, Michigan, as a food service supervisor. As food
service supervisor, Plaintiff was required to monitor inmates as they prepared meals

---

[*] The Honorable John R. Adams, United States District Judge for the Northern District of Ohio,
sitting by designation.

for the larger prison population, ensure kitchen utensils were being used by the inmates in a safe and appropriate manner, and generally account for the safety, security, and sanitation of the kitchen area while the inmates worked. Plaintiff was usually the sole correctional facility employee overseeing food production at any given time, and he was responsible for supervising approximately fifteen to twenty inmates a day.

In 2000, Plaintiff was cited and suspended for inattention to duty after he was found sleeping in his office while inmates were working in the kitchen. Plaintiff was cited and reprimanded for a similar occurrence in 2002, though Plaintiff denied that he was sleeping on this occasion. On January 27, 2005, correctional facility employees observed Plaintiff dosing off as he monitored the breakfast line. As part of a disciplinary conference arising out of this incident, Plaintiff was shown a security video of himself confirming what the other employees had observed. Plaintiff was given a one-day suspension. This occasion prompted Plaintiff to seek a medical consultation in April of 2005. Plaintiff visited Doctor Lee C. Marmion, who conducted sleep studies on Plaintiff and determined that he suffered from narcolepsy. Dr. Marmion prescribed Plaintiff a drug called Provigil to combat his condition. In addition, Plaintiff asked Defendant to assign him permanently to the third shift rather than rotate him among various shifts because he believed he slept better during the day and would come to work more rested. Defendant granted this request.

On July 11, 2005, both Plaintiff and his supervisor noted that his attentiveness had improved. (Dkt. No. 13, Ex. 10.) Nevertheless, Plaintiff continued to suffer from narcoleptic episodes. On April 24, 2006, Plaintiff was again cited and suspended for inattention to duty after he was found sleeping in the kitchen. On December 27, 2006, inmates were involved in horseplay in the kitchen. An investigation revealed that the inmates were intoxicated, and that they had likely created the alcohol themselves by hiding fruits and vegetables somewhere in the facility and allowing them to ferment. As the supervisor on duty, Plaintiff was held responsible for the actions of the inmates, and

was given a four day suspension. On April 6, 2007, Plaintiff was again found sleeping in the kitchen, and was given a five day suspension. On July 14, 2007, Plaintiff was standing near the breakfast line when one of the inmates discovered that the milk was spoiled and needed to be replaced. The inmate attempted to communicate the problem, but Plaintiff did not respond because he was leaning against a wall of the kitchen drifting in and out of sleep.

Following the July 14, 2007, incident, and as a result of all the disciplinary measures taken against Plaintiff, Plaintiff was discharged on November 5, 2007. Plaintiff originally brought suit for disability discrimination under the Michigan Persons with Disabilities Civil Rights Act (PDCRA) and the Americans with Disabilities Act (ADA) on July 7, 2009, but Plaintiff amended his complaint on August 25, 2009, to replace the ADA claim with a Rehabilitation Act claim. Plaintiff's wife, Diane K. Roetter, brings a claim for loss of consortium. Defendant filed this motion for summary judgment on all claims on September 25, 2009.

On July 12, 2010, the District Court granted the MDOC's summary judgment on all of the Roetters' claims. The District Court concluded that "[r]egardless of whether Plaintiff has direct evidence of disability discrimination or has no such evidence, Plaintiff's Rehabilitation Act and Michigan PDCRA claims require him to show that he is 'otherwise qualified' to perform the essential functions of his position, with or without reasonable accommodation." The District Court determined that remaining attentive was an essential function of Mr. Roetter's position at the MDOC. The District Court explained that Mr. Roetter could not and did not show that he could remain attentive to his position with the accommodation that he requested and received and that although a further accommodation might have aided his attention problems, Mr. Roetter did not request any other accommodations. Thus, the District Court concluded that Mr. Roetter's PDCRA and Rehabilitation Act claims failed and that Mrs. Roetter's loss of consortium claim failed because

it was dependent upon the success of Mr. Roetter's claims. Accordingly, the District Court granted the MDOC's summary judgment motion.

The Roetters timely appealed to this Court. The Roetters contend that the evidence in the record shows that Mr. Roetter was terminated for three narcoleptic episodes over 26 months that had no effect on the operations of the food service department. They argue that the District Court erred when it relied upon these episodes as evidence that Mr. Roetter was not otherwise qualified to perform the essential functions of his job. The Roetters do not contest that these episodes were before the District Court for consideration, but rather take specific issue with the District Court's conclusion that "the threat to security posed by an inattentive supervisor is obvious." The Roetters argue that, to the contrary, there was no evidence before the District Court that there was any threat to the MDOC. It appears that the Roetters do not take issue with any of the District Court's findings of fact, but rather take issue with its application of the law to those facts.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 463 (6th Cir. 2004). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The MDOC bears the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the Roetters' claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Roetters must then present sufficient evidence from which a jury could reasonably find in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We then consider whether, drawing all reasonable inferences in favor of the Roetters, the MDOC must prevail as a matter of law. See *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

### III. Law and Analysis

Mr. Roetter's disability-based discrimination claim was brought pursuant to the Rehabilitation Act, 29 U.S.C. §794 et seq. and the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §37.1101 et seq. In this Circuit, claims under the Rehabilitation Act substantively mirror those brought under the Americans with Disabilities Act. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Similarly, claims brought under the Michigan Persons with Disabilities Civil Rights Act "essentially track those under federal law." *Id*. at 1178 n.3.

Mr. Roetter can show a violation of the Rehabilitation Act "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination to shift the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for making the adverse employment decision." *Monette*, 90 F.3d at 1178 (internal citations omitted).

This Court has explained in depth the differing tests required to establish a prima facie case of disability discrimination based upon whether a plaintiff introduces direct or indirect evidence:

> To sum up, if the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the handicap:
> 1) The plaintiff bears the burden of establishing that he or she is "disabled."
> 2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.
> 3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.
> If the plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a *prima facie* case of discrimination by showing that: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse

employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times. *Monette*, 90 F.3d at 1186-87 (internal citations omitted).

In its motion for summary judgment, the MDOC argued that Mr. Roetter could not establish that he was otherwise qualified to serve as an MDOC food services leader with the previously approved accommodation of working at night.

The District Court noted that, because the parties had only conducted limited discovery in this case, Mr. Roetter did not yet know whether he would attempt to use direct or indirect evidence to prove his case. The District Court explained, and this Court agrees, that regardless, Mr. Roetter maintained the burden under either test to prove that he was "otherwise qualified" for his position with or without an accommodation. The District Court concluded that the record was clear that Mr. Roetter was not "otherwise qualified" to perform an essential function of his position and as such there was no genuine dispute of material fact. This Court agrees.

Pursuant to 29 U.S.C. §794(d), the definitions under the American with Disabilities Act of 1990, 42 U.S.C. §12111, apply to the Rehabilitation Act. To be "otherwise qualified" for the job, the employee must show she can perform the "essential functions" of the job, with or without accommodation. See 42 U.S.C. § 12111(8); *Hedrick v. W. Reserve Care Sys*., 355 F.3d 444, 456 (6th Cir. 2004). Further, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. §12111(8).

Mr. Roetter was a Food Service Supervisor. The MDOC attached the following job description to its motion for summary judgment:[1]

> Supervise prison inmates in preparation, handling, serving and storage of food in a food service operation at a correctional facility. Oversee the shipping and receiving of food items as well as proper sanitation of the Department. Assign prisoner duties and follow through to assure they are completed while following and enforcing all Department policies and procedures. Use independent judgement (sic) in making decisions related to the work.

Notably, Mr. Roetter's job description further allotted percentages to his assigned duties. The description indicates that approximately 25% of his time was allotted to "Security Duties." This was described as supervising "prisoner workers and assist custody staff in keeping all area in food service [secure] and safe." Fifty percent of his time was to be allotted to prisoner supervision; supervising prisoner workers as they prepare, hold and serve meals. The remaining 25% was allotted to administrative duties. Therefore, Mr. Roetter's attempt to argue to this Court that "Roetter's condition had not caused any threat to the institution and it is doubtful whether it could" and that "Roetter did not work in a security position, and at 150 pounds, could be easily overpowered by the inmates with whom he worked whether he was awake or not" is disingenuous. His job description, as attached to the MDOC's motion for summary judgment, clearly establishes that security duties were part of his employment and thus an essential function. The fact that no actual harm occurred while Mr. Roetter failed to meet his job requirements does not support an argument that Mr. Roetter actually met the requirements of his job. Mr. Roetter's argument that such a showing is necessary would essentially eliminate the requirement that an employee perform his essential functions so long as it results in no harm to his employer. This Court will not so tie the MDOC's hands. Reading this

---

[1] The attached job description indicates that it was signed on March 16, 1997. While Mr. Roetter began his employment with the MDOC in 1989, he does not challenge the job description as presented by the MDOC.

argument liberally, it appears that Mr. Roetter admits that, even absent his disability, he could not meet the essential function of his job.

Further, Mr. Roetter's own request for an accommodation belies his argument that his state of alertness had no effect on his job performance and therefore is not an essential function of his position. In 2005, Mr. Roetter sought and received an accommodation due to his narcolepsy. Specifically, Mr. Roetter requested the accommodation "due to diagnosis of severe narcolepsy the attempt to alter my established sleep pattern adversely affects my ability to remain alert for the duties required to fulfill my job requirements as per doctor recommendations and prescribed medications." This Court reads this request as an admission that the ability to remain alert is required for Mr. Roetter to fulfill his job requirements as stated above.

Mr. Roetter appears to argue that the MDOC, knowing of his disability, should have further accommodated him. Mr. Roetter points out that the MDOC had a "shake and shout technique" for dealing with a person who is unresponsive or having difficulty with any potential medical condition. Mr. Roetter complains that his coworkers did not immediately follow this procedure when they found him sleeping. It is clear from the record, however, that Mr. Roetter sought and received an accommodation for his disability. There is no evidence, nor does Mr. Roetter argue, that he requested any further accommodations or that he made any requests to modify his accommodation. *See Monette*, 90 F.3d at 1183 (explaining that "the disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable.") In the absence of such a request, this "shake and shout technique" was nothing more than an internal first aid policy. Whether his co-workers were following an internal procedure does not negate the fact that Mr. Roetter was found sleeping on the job.

Mr. Roetter argues that "because Roetter was discharged as a result of disciplinary proceedings arising out of the symptoms of his medical condition, this is a case in which the employer unquestionably relied upon plaintiff's disability in discharging him." Mr. Roetter's argument, at least in part, is that this conduct is direct evidence of disability discrimination. This argument is, even if true, without merit. As explained above, even if the Court were to consider Mr. Roetter's termination as direct evidence of disability discrimination, the result would be to utilize the three-part test stated in *Monette* rather than the five-part test. See 90 F.3d at 1186-87. But, as the Court has explained, Mr. Roetter cannot show that he is otherwise qualified as required under *both* tests. As this is an element of a prima facie case whether this Court considers the indirect or direct test, Mr. Roetter must overcome this hurdle before the burden would shift to the MDOC.

Finally, "the Rehabilitation Act permits an employer to make a decision because of a handicap if the handicap is not the sole reason for the decision. 'The Rehabilitation Act forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap.' *Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437, 443 (6th Cir. 1991). A federal grantee may make an employment decision adverse to a handicapped person if, for example, the person's handicap causes him or her to be unable to perform an essential function of the job. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 288 n.17, 1131 n.17(1987) (citations omitted); *Jasany*, 755 F.2d at 1250." *Burns v. City of Columbus,* 91 F.3d 836, 841-42 (6th Cir. 1996). Thus, assuming arguendo that the MDOC's decision to terminate Mr. Roetter was based upon the attributes of his handicap, i.e., inattentiveness, the MDOC was justified in determining that these attributes rendered Mr. Roetter unable to perform an essential function of his job. As such, the District Court did not err in granting summary judgment in the MDOC's favor.

Finally, Mrs. Roetter's loss of consortium claim was contingent upon the success of Mr. Roetter's claims. *See Monette*, 90 F.3d at 1176, n.1. As the Court has disposed of Mr. Roetter's claim pursuant to the Rehabilitation Act and the Michigan PDCRA, it also disposes of Mrs. Roetter's claim.

## IV. Conclusion

The Court has reviewed the Roetters' arguments on appeal. Finding no merit in their arguments, for the reasons described above, we AFFIRM the district court's grant of summary judgment.