NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0307n.06

No. 17-2349

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KEDRIC MITCHELL, | ) | **FILED** |
| | ) | Jun 21, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| UNITED STATES POSTAL SERVICE, et al., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Defendants-Appellees. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: KEITH, ROGERS, and BUSH, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Appellant Kedric Mitchell filed a complaint claiming, pursuant to the Rehabilitation Act, that Appellees United States Postal Service and the Postmaster General unlawfully discriminated against him. Appellant appealed the district court's decision to grant Appellees' Motion for Summary Judgment on his discrimination claim. For the following reasons, we affirm the district court's decision.

## I. BACKGROUND

### 1. Mitchell's Employment History and Roslyn Brown's Letter

In 1997, Kedric Mitchell ("Mitchell") began working for the United States Postal Service ("USPS") as a full-time employee.[1] Mitchell had a history of taking unpaid leaves of absence from

---

[1] The United States Postal Service and the Postmaster General will collectively be referred to as "USPS" throughout the opinion.

work due to his depression, including a leave for several months that began in 2007 and ended sometime in 2008. Mitchell subsequently took a second leave of less than a year that ended in January 2009, although Mitchell does not recall when it began. Mitchell began a third leave of absence in September 2009, and returned to work on August 3, 2010.

Upon his return to work, Mitchell presented a note written by his psychologist, Dr. Amy Trabitz, to his supervisor. The note read as follows: "As of [August 2, 2010], Mr. Kedric Mitchell is able to fully return to work with no restrictions. Please feel free to contact me should you have any further questions." Around the same time, however, USPS received a letter from Mitchell's wife, Roslyn Brown ("Brown"). This letter was originally sent on June 27, 2010, during Mitchell's leave of absence, but was returned and marked "return to sender," leading Mitchell himself to resend the letter around the time he resumed work. Brown's letter highlighted Mitchell's mental instability, and concluded that she did not think "he should be allowed back into [the USPS] facility." This letter was accompanied by a letter written by Mitchell himself, wherein Mitchell stated that he asked his wife to write her letter.

Brown's letter asserted, *inter alia*, the following allegations: (1) Mitchell suffered from stress and depression, and that Brown believed his mental condition rendered him mentally unstable at the time; (2) USPS should not allow a mentally unstable person to work in an "environment he[] deems hostile"; (3) Mitchell might "suffer a mental or physical breakdown if he return[ed] to work right now"; (4) USPS would assume responsibility for anything that happened to Mitchell should he be allowed to work; and, (5) doctors were not fully aware of recent developments in Mitchell's case, and how those developments were affecting his condition.

### 2. Mitchell Placed on Leave Until the Concerns Raised in Brown's Letter Are Addressed

On August 11, 2010, as a result of Brown's letter, USPS convened a threat assessment team comprised of USPS Manager of Labor Relations Gail Lewis ("Lewis"),[2] Lee Ward – who was Lewis' manager at the time – and Dr. Nisha Parulekar, a doctor employed by USPS. The threat assessment team concluded that based on the letter, they needed "medical documentation to substantiate that [Mitchell] could return to work without causing harm to [him]self or others."

Later that same day, Mitchell met with Lewis, Dr. Parulekar, Danyelle Riggins – who was the Manager of Distribution Operations at the USPS facility where Mitchell worked – and union officials to discuss the concerns presented in Brown's letter. Mitchell was informed that he would not be able to return to work until his doctor, Dr. Trabitz, addressed in writing the issues raised in Brown's letter. Mitchell was also told that in the alternative, he could sign a release that would allow Dr. Parulekar to contact Dr. Trabitz directly. Mitchell declined to sign the release and asked USPS officials to put their request in writing, but they refused. Mitchell left work on August 11, 2010, without providing the requested medical documentation.

In January 2011, USPS sent Mitchell a letter informing him that he had been absent from work since August 11, 2010. In this letter, USPS also requested medical documentation to substantiate his absence from work. Mitchell responded with his own letter shortly afterwards stating that USPS's demand for documentation was unfair. Mitchell also requested a written explanation for why Dr. Trabitz's August 2, 2010 note was not sufficient to allow him to return to work.

---

[2] When her deposition occurred on April 13, 2017, Ms. Lewis was the Manager of Learning, Development, and Diversity at USPS.

### 3. EEOC Judgment and Subsequent End of Employment with USPS

On December 23, 2010, Mitchell filed a formal Equal Employment Opportunity Commission ("EEOC") Complaint, asserting that USPS's rejection of his medical clearance and decision to prohibit him from returning to work until his doctor addressed the concerns raised in Brown's letter amounted to unlawful disability discrimination. He also argued that USPS's actions were retaliation for a previous EEOC Complaint that Mitchell had filed in February 2009.[3] The EEOC issued a judgment in favor of USPS on both claims on May 21, 2012.

USPS subsequently sent Mitchell a letter on May 31, 2013, because Mitchell had not returned to work from his August 2010 leave. The letter explained that USPS was proposing to issue a notice of separation as a result of his prolonged absence. The letter further asked Mitchell to participate in an investigative interview on June 6, 2013, prior to a final decision on his separation.

On August 12, 2013, USPS sent Mitchell a notice of separation, informing him that he would be separated on September 13, 2013. The notice reflected that Mitchell had reported for the June 6, 2013 interview and was told he could return to work if he followed the instructions given to him in August 2010, namely, that he provide his doctor with a copy of Brown's letter and then provide documentation from his doctor stating there was no risk of Mitchell injuring himself or others. Mitchell failed to provide any documentation and was separated from employment, effective September 13, 2013.

### 4. Procedural Posture

On October 9, 2014, Mitchell filed a *pro se* complaint asserting claims against USPS for discrimination and retaliation under multiple statutes. Specifically, Mitchell claimed that USPS

---

[3] Mitchell filed his first EEOC Complaint in February 2009, alleging discriminatory treatment because of his depression. Later in 2009, Mitchell took a leave of absence due to his depression.

discriminated against him because of his depression, and retaliated against him after his wife filed an EEOC grievance in 2006. USPS moved to partially dismiss the complaint, contending that Mitchell had failed to administratively exhaust claims related to his wife's EEOC activities. Mitchell then hired counsel and filed an amended complaint, along with a response to USPS's motion to dismiss.

Mitchell's amended complaint alleged claims of discrimination and retaliation pursuant to the Rehabilitation Act. The district court granted USPS's motion to dismiss with respect to any aspect of Mitchell's claim that was premised on his wife's EEOC activity. The court held that it was precluded, as a matter of law, from ruling on the claim because it was not exhausted during the administrative process.

On May 5, 2017, USPS moved for summary judgment, arguing that Mitchell failed to create a genuine dispute of material fact regarding whether USPS discriminated against him because of his disability. Mitchell filed a response opposing the motion, and the district court granted the motion in favor of USPS on October 4, 2017. The court held that Mitchell failed to provide direct evidence of unlawful discrimination, and also failed to identify evidence that would persuade a jury that USPS's proffered reasons for its actions were pretextual under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). The district court also found for USPS on (1) Mitchell's retaliation claim because Mitchell did not address this claim in his response to USPS's motion for summary judgment, and (2) Mitchell's purported claim for failure to provide a reasonable accommodation because the claim was not exhausted at the administrative level.

Mitchell timely filed a notice of appeal on November 2, 2017. Mitchell abandoned his retaliation claim on appeal, and did not raise a claim for wrongful termination in the district court.

Accordingly, the only claim before us is whether USPS's decision to place Mitchell on leave in August 2010 amounted to unlawful discrimination under the Rehabilitation Act.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

#### 1. Fed. R. Civ. P. 56(a) – Summary Judgment

We review a district court's grant of summary judgment de novo. *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016). Summary judgment is appropriate only where there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law,' this Court must view all of the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Id.* (quoting *Anderson*, 477 U.S. at 251-52).

#### 2. Discrimination Under the Rehabilitation Act

Mitchell brought his claims against USPS pursuant to the Rehabilitation Act. The Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted). "[E]mployment discrimination complaints under the Rehabilitation Act are governed by the standards of the Americans with Disabilities Act of 1990 (ADA) . . . ." *Spence v. Donahoe*, 515 F. App'x 561, 568 (6th Cir. 2013) (citing *Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011);

29 U.S.C. § 794(d)). Accordingly, "cases construing one statute are instructive in construing the other." *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To prevail on a claim for discrimination under the Rehabilitation Act, a plaintiff must show that he: (1) is disabled, (2) is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodation, and (3) suffered an adverse employment action solely because of his disability. *Jones*, 488 F.3d at 403.

A claimant may establish a violation of the Rehabilitation Act "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision . . . ." *Roetter v. Michigan Dept. of Corrs.*, 456 F. App'x 566, 569 (6th Cir. 2012) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) *abrogated in part by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)).[4] Alternatively, a plaintiff who is unable to put forth direct evidence of discrimination may establish a Rehabilitation Act claim indirectly, by utilizing the burden-shifting framework of *McDonnell Douglas*. *See Jones*, 488 F.3d at 403-04. In both the indirect and direct methods, to prevail on a claim of discrimination pursuant to the Rehabilitation Act, Mitchell must demonstrate that he was fired "solely by reason of . . . his disability." *Jones*, 488 F.3d at 409 (quoting 29 U.S.C.

---

[4] In *Lewis*, we abrogated *Monette* in part by concluding that a plaintiff seeking relief under the ADA must show that he suffered an adverse employment action "because of," rather than "*solely* by reason of" a disability. *Lewis*, 681 F.3d at 317, 321 (emphasis added). "The sole-cause standard . . . is a creature of the Rehabilitation Act . . . ." *Id.* at 317. To the extent *Monette* prescribes direct and indirect tests for demonstrating discrimination under the ADA – and consequently, the Rehabilitation Act – those tests are still good law in this circuit. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-892 (6th Cir. 2016) (applying the direct and indirect tests for establishing discrimination under the ADA as delineated in *Monette*, even after *Monette* was abrogated in part by *Lewis*).

§ 794(a)).  This occurs when "the employer has no reason left to rely on to justify its decision *other than the employee's disability[.]*"  *Monette*, 90 F.3d at 1183 n.9 (emphasis in original).

"Distinguishing between cases that involve direct evidence of discrimination and those in which the plaintiff is not able to introduce direct evidence is vital because the framework for analyzing the two kinds of cases differs."  *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016) (citation omitted).  "When an 'employer acknowledges that it relied upon the plaintiff's handicap in making its employment decision . . . [t]he *McDonnell Douglas* burden shifting approach is unnecessary because the issue of the employer's intent, the issue for which *McDonnell Douglas* was designed, has been admitted by the defendant . . . and the plaintiff has direct evidence of discrimination on the basis of his or her disability."  *Id.* (quoting *Monette*, 90 F.3d at 1182).

## B.  Analysis

### 1.  Mitchell Failed to Provide Direct Evidence of Unlawful Discrimination

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences."  *Grizzel v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (internal quotation marks and citation omitted).  "The direct evidence standard essentially requires an admission in some form by the employer that it relied on the disability in making an employment decision."  *Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 855 (6th Cir. 2002) (citation omitted).  "If there is direct evidence that the plaintiff suffered an adverse employment action [solely] because of his or her disability, the plaintiff then 'bears the burden of establishing that he or she is "disabled"' and '"otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.'"  *Ferrari*, 826 F.3d at 891 (quoting *Monette*, 90 F.3d at 1186).  "Once the plaintiff has established these elements, the employer

'bear[s] the burden of proving that a challenged job criterion is essential . . . or that a proposed accommodation will impose an undue hardship upon the employer.'" *Id.* (quoting *Monette*, 90 F.3d at 1186).

The district court determined that Mitchell failed to provide direct evidence of unlawful disability discrimination, but on appeal, Mitchell contests this conclusion. Mitchell first argues that USPS's requirement that either his doctor address Brown's letter in writing or Mitchell sign a release allowing USPS to contact his doctor directly, amounts to direct evidence of discrimination. This argument misses the mark, however, because USPS was merely seeking expert medical opinion concerning whether Mitchell would be a danger to himself or fellow USPS employees. Nothing in the record suggests that USPS's request was initiated *because* of his depression; instead, the request was the result of information provided by Brown's letter.

This case is similar to, but distinguishable from, *White v. Honda of Am. Mfg., Inc.*, 191 F. Supp. 2d 933 (S.D. Ohio 2002). In *White*, the court held that the employer's honestly held belief that the employee, White, was not fit to work when she attempted to return to work constituted direct evidence of disability discrimination. *Id.* at 941. White was required to work at least one day within a twelve-month period to retain her job, but the employer refused to allow White, who was undergoing treatment for cancer and related complications, to work the requisite day because an HR employee and a company nurse deemed her physically incapable of working, even though White's doctor provided documentation stating that she was fit to work. *Id.* at 938-41. The court reasoned that the employer's decision to discharge White amounted to disability discrimination because the employer unilaterally determined that White's disability prevented her from working. *Id.* at 955. The court further noted that the employer "would have been well within reason to request an independent medical evaluation, which it did not[,]" and that the employer "could have

determined thereafter, from the independent exam, whether [the employee] could have returned to work during the 12 month period." *Id.* at 949.

Here, unlike the employer in *White*, USPS sought additional information in the form of an expert medical opinion by requesting that Mitchell ask Dr. Trabitz to address the safety concerns raised in Brown's letter before making a determination regarding Mitchell's ability to return to work. USPS pursued this information in response to the letter it received from Brown questioning Mitchell's ability to safely work, not because of Mitchell's depression. And unlike the employer in *White*, USPS did not ignore input from Dr. Trabitz–it actively pursued such information.

"Employers are permitted to 'conduct voluntary medical examinations' and 'make inquiries into the ability of an employee to perform job-related functions.'" *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 815 n.7 (6th Cir. 2012) (quoting 42 U.S.C. § 12112(d)(4)(B)). "[E]mployees can be instructed to undergo medical examinations by employers only 'in certain limited circumstances,' confined by the 'job-relatedness' and 'business necessity' requirements." *Id.* at 815 (quoting *E.E.O.C v. Prevo's Family Mkt. Inc.*, 135 F.3d 1089, 1094 (6th Cir. 1998)). "[F]or an employer's request for an exam to be upheld, there must be significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999).[5]

At least three of our sister circuits have held that an employer's concern about workplace safety is a legitimate, nondiscriminatory reason for requesting a medical examination consistent with a business necessity. *See Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1312 (11th Cir.

---

[5] Indeed, "[t]hrough the passage of the Rehabilitation Act, Congress intended to protect disabled individuals 'from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns . . . as avoiding exposing others to significant health and safety risks.'" *Estate of Mauro By & Through Mauro v. Borgess Med. Ctr.*, 137 F.3d 398, 402 (6th Cir. 1998) (quoting *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 287 (1987)).

2013) (holding that "an employer can lawfully require a psychiatric/psychological fitness-for-duty evaluation . . . if it has information suggesting that an employee is unstable and may pose a danger to others."); *Conroy v. New York State Dept. of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003) ("[B]usiness necessities may include ensuring that the workplace is safe and secure."); *see also E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1283 (7th Cir. 1995) ("It would seem that a requirement that employees not pose a significant safety threat in the workplace would obviously be consistent with business necessity: a safe workplace is a paradigmatic necessity of operating a business."). In our view, USPS's request for a response from Dr. Trabitz, reviewing and analyzing Brown's letter, is tantamount to asking Mitchell to undergo a medical or mental fitness evaluation. It was a legitimate, nondiscriminatory action to address a workplace safety concern involving both Mitchell and other USPS employees.

To the extent that Mitchell argues that USPS's supposed refusal to accept certain notes written by Dr. Trabitz also represents direct evidence of discrimination, this argument also misses the mark. Mitchell maintains that Dr. Trabitz wrote three notes, dated August 16, 2010, August 27, 2012, and August 19, 2013. The August 16, 2010 letter stated that Mitchell had been treated for depression and stress since September 2009, and in Dr. Trabitz's opinion, Mitchell did not present a "danger to himself or to others." The August 27, 2012 and August 19, 2013 letters similarly noted the period of treatment and stated that Mitchell was able to work at his regular job without restrictions. The notes do not address, or even refer to, Brown's letter.

While Mitchell stresses that he mailed all three letters to USPS, USPS denies receiving them. Moreover, and most saliently, Dr. Trabitz testified that Mitchell did not inform her of Brown's letter until April 6, 2015, years after USPS initially requested that Dr. Trabitz respond specifically to the concerns raised by Brown. Accordingly, the notes written by Dr. Trabitz that

11

Mitchell highlights *could not* have addressed Brown's letter. It was therefore not discriminatory for USPS to reject the notes, even if USPS had received them, because the notes did not provide the information that USPS requested. This request was squarely within the confines of job-relatedness and business necessity concerns. *See Kroll*, 691 F.3d at 815.

Mitchell has not put forth any evidence of direct discrimination as it is traditionally defined. Accordingly, Mitchell failed to provide any direct evidence of disability-based discrimination.

### 2. Indirect Evidence of Discrimination Under the Rehabilitation Act and *McDonnell Douglas*

We now turn to Mitchell's claim of indirect discrimination. The *McDonnell Douglas* analysis consists of three steps. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). First, "a plaintiff must set forth a prima facie case of discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Second, after a prima facie case has been made, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its actions. *Id.* Lastly, if the employer fulfils this requirement, the burden shifts back to the plaintiff to demonstrate that the defendant's explanation is pretext for unlawful discrimination. *Jones*, 488 F.3d at 404. Mitchell can defeat summary judgment only if he produces evidence sufficient to "create a genuine dispute [of fact] at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

As a preliminary matter, the district court assumed that Mitchell established a prima facie case "without deciding" if Mitchell had actually met that burden. Because "the postal service [does] not argue that the district court erred by assuming that Mitchell established a prima facie case,"[6] we will likewise assume a prima facie case.

---

[6] It should be noted, however, that the district court, instead of using a three-element test from *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002), should have used the five-favor test from *Jones* to state the element of a prima facie case: "(1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation,

As explained below, the district court properly granted summary judgment in favor of USPS because there is no genuine dispute of material fact as to pretext.

### a. USPS Articulated a Legitimate, Nondiscriminatory Reason for Placing Mitchell on Leave

With the prima facie case not at issue, "the burden shifts to [USPS] to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). This step is merely a "burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). Although "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons," it must raise "a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). USPS "must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse employment action]." *Id.* at 255. "The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.*

Here, USPS argues that workplace safety concerns were a legitimate, nondiscriminatory reason for placing Mitchell on leave. These concerns arose from Brown's letter, which was sent to USPS by Mitchell himself. Brown's letter explicitly stated, *inter alia*, that: (1) she was concerned Mitchell may have a physical or mental breakdown if he returned to work; (2) Mitchell was unstable at times; (3) Mitchell's doctors were not fully aware of his condition; and (4) USPS should place him on leave until his EEOC case is resolved. USPS met its burden of articulating a legitimate, nondiscriminatory reason for its actions. The burden now shifts back to Mitchell to establish that USPS's stated reason of workplace safety is pretextual.

---

(3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open." *Jones*, 488 F.3d at 404 (citing *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004)).

#### b. The Proffered Reason Offered by USPS Was Not Pretextual

Because USPS put forth a legitimate, nondiscriminatory reason for its decision to place Mitchell on leave, the remaining inquiry is "whether that reason was simply a pretext designed to mask discrimination." *Jones*, 488 F.3d at 406 (citing *Burdine*, 450 U.S. at 253). "A plaintiff may show pretext by demonstrating: '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse employment action], or (3) that they were insufficient to motivate [the adverse employment action]." *Davis v. Cintas Corp.*, 717 F.3d 476, 491-92 (6th Cir. 2013) (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)). At this stage, it is Mitchell's burden to put forth evidence that, "taken in a light most favorable to [him], could lead a reasonable jury to reject [USPS's] proffered explanations." *Id.* at 491. Mitchell "need not definitively prove that [USPS's] reason[s] [are] pretextual, but rather 'must prove only enough to create a *genuine issue* as to whether the rationale is pretextual.'" *Ferrari*, 826 F.3d at 895 (quoting *Whitfield*, 639 F.3d at 260) (emphasis in original).

Mitchell has not specified which theory of pretext he is pursuing, or how the district court erred in its analysis of this issue. In any event, all of Mitchell's purported arguments are inapposite. First, though Mitchell seems to suggest that he was treated differently from other USPS employees because of his disability, he has cited no evidence in the record to support this allegation. Succinctly stating that he suffered from disparate treatment, without more, does not establish pretext.

Second, to the extent that Mitchell argues that USPS's workplace safety concerns were not the true motivation for requesting that he provide medical documentation from his doctor, and placing him on leave, this argument fails because none of the notes that Mitchell purportedly provided addressed the issues raised in Brown's letter, irrespective of whether USPS actually

received them. Even assuming USPS did receive the notes written by Dr. Trabitz that Mitchell is referring to, the notes do not support the conclusion that USPS's request for a response to Brown's letter was pretextual. These notes were perfunctory and did not address the specific concerns raised by Brown's letter. In fact, Dr. Trabitz did not know Brown's letter existed until April 2015, years after USPS initially requested her input.

USPS convened a threat assessment team after receiving Brown's letter because of the concerns potentially affecting workplace safety. Mitchell has neither put forth any evidence showing that USPS convened the meeting to terminate Mitchell because of his depression, nor otherwise created a genuine issue of material fact with regard to USPS's stated motivations. USPS requested more information from Mitchell's doctor because Mitchell's wife explained that his doctors were unaware of the true state of Mitchell's condition. Brown's letter raised concerns for workplace safety and thus, USPS had a legitimate, non-discriminatory reason to place Mitchell on off-duty status until he provided medical evidence that, contrary to the assertions in Brown's letter, he was able to safely return to work.

Consequently, Mitchell has not created a genuine dispute of material fact with respect to whether USPS's proffered reason for placing him on leave in August 2010 was a pretext for discrimination. USPS's proffered reason has a demonstrable basis in fact.

### c. Mitchell Has Not Demonstrated That He Was Terminated Solely Because of His Disability

Lastly, to prevail on a claim of discrimination pursuant to the Rehabilitation Act, Mitchell must also demonstrate that he was fired "solely by reason of . . . his disability." *Jones*, 488 F.3d at 409 (quoting 29 U.S.C. § 794(a)). This occurs when "the employer has no reason left to rely on to justify its decision *other* than the employee's disability[.]" *Monette*, 90 F.3d at 1183 n.9 (emphasis in original). A conclusion in Mitchell's favor here would not support an inference that

workplace safety concerns did not play a role in USPS's request for additional medical documentation from Dr. Trabitz. Therefore, Mitchell has not met his burden of demonstrating that he was fired solely because of his disability and consequently, Mitchell has not demonstrated that USPS's proffered reason for placing him on leave in August 2010 was pretextual.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.