SUTTON, J., delivered the opinion of the court, in which BATCHELDER, C.J., BOGGS, GIBBONS, ROGERS, COOK, McKEAGUE, GRIFFIN, and KETHLEDGE, JJ„ joined. CLAY, J. (pp. 322-25), delivered a separate opinion concurring in part and dissenting in part, in which MARTIN, J., joined. STRANCH, J. (pp. 325-31), delivered a separate opinion concurring in part and dissenting in part, in which MOORE, COLE, and WHITE, JJ„ joined. DONALD, J. (pp. 331-42), delivered a separate opinion concurring in part and dissenting in part.
OPINION
SUTTON, Circuit Judge.
When Susan Lewis filed this lawsuit in 2007, Title I of the Americans with Disabilities Act (ADA) prohibited discrimination “because of’ the disability of an employee. 42 U.S.C. § 12112(a), Pub.L. No. 101-336, Title I, § 102, 104 Stat. 327, 331 (1990) (amended 1991). When it came time to present her ADA claim to a jury, each party urged the district court to put a different gloss on this language. The company asked the court to instruct the jury *314 that Lewis could prevail only if the company’s decision to fire her was “sole[ly]” because of Lewis’s disability, a term that appears in the Rehabilitation Act but not in the ADA. Lewis asked the court to instruct the jury that she could prevail if her disability was “a motivating factor” in the company’s employment action, a phrase that appears in Title VII but not in the ADA. Consistent with the Supreme Court’s decision in Gross v. FBL Financial Services, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), we see no reason to insert the one addendum (“solely”) or the other (“a motivating factor”) into the ADA. As the district court’s jury instructions did not comply with all of these requirements, we reverse and grant Lewis a new trial.
I.
In March 2006, Humboldt Acquisition Corporation dismissed Lewis from her position as a registered nurse at one of the company’s retirement homes. Lewis sued Humboldt under the ADA in March 2007, claiming that Humboldt fired her because she had a medical condition that made it difficult for her to walk and that occasionally required her to use a wheelchair. Humboldt responded that it dismissed Lewis based on an outburst at work, in which she allegedly yelled, used profanity and criticized her supervisors.
The case went to a jury. At the close of the trial, Lewis asked the court to instruct the jury that if “the complained of discrimination was a motivating factor in the adverse employment decision,” she should prevail. R.57 at 5 (emphasis added). The district court refused the request. It instead adopted the company’s proposed instruction — that Lewis could prevail only if “the fact that [the] plaintiff was a qualified individual with a disability was the sole reason for the defendant’s decision to terminate [the] plaintiff.” R.100 at 14 (emphasis added). The jury ruled for the company.
II.
In adopting the company’s proposed instruction, the district court did not walk alone. For the past seventeen years, our court has required district courts to instruct juries that ADA claimants may win only if they show that their disability was the “sole” reason for any adverse employment action against them. The term crept into our ADA jurisprudence in Maddox v. University of Tennessee, 62 F.3d 843 (6th Cir.1995), which involved claims under the ADA and the Rehabilitation Act of 1973, a happenstance that may explain why we blurred the distinction between the laws in the first place. Then, as now, the Rehabilitation Act and the ADA serve the same goals, seeking to eliminate disability-based discrimination and other barriers to employment and public services for individuals with disabilities. With the passage of the ADA in 1990, Congress extended many of the Rehabilitation Act’s protections to entities that do not receive federal funding, and borrowed many of the requirements and standards from the earlier law in doing so. Relying on these similarities between the two laws (but neglecting to mention the differences between their causation standards), Maddox applied the Rehabilitation Act’s causation standard to both claims because “[t]he ADA parallels the protection of the Rehabilitation Act.” Id. at 846 n. 2.
Consistent with Maddox, we used the “solely” standard in an ADA-only claim a year later, Monette v. Electronic Systems Corporation, 90 F.3d 1173, 1177-78 (6th Cir.1996), and before long that became the standard for relief under the ADA in this circuit, see, e.g., Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 363-64 *315 (6th Cir.2007); Cotter v. Ajilon Servs., Inc., 287 F.3d 593, 598 (6th Cir.2002).
The longer we have stood by this standard, the more out of touch it has become with the standards used by our sister circuits. At this point, no other circuit imports the “solely” test into the ADA. See Katz v. City Metal Co., 87 F.3d 26, 33 (1st Cir.1996); Parker v. Columbia Pictures Indus., 204 F.3d 326, 337 (2d Cir.2000); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir.2003); Baird v. Rose, 192 F.3d 462, 468-69 (4th Cir.1999) (Title II case); Pinkerton v. Spellings, 529 F.3d 513, 519 (5th Cir.2008); Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 963 (7th Cir.2010); Pedigo v. P.A.M. Transp., Inc., 60 F.3d 1300, 1301 (8th Cir. 1995); Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1065 (9th Cir.2005); Bones v. Honeywell Int’l, Inc., 366 F.3d 869, 878 (10th Cir.2004); McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1074 (11th Cir.1996); Adeyemi v. Dist. of Columbia, 525 F.3d 1222, 1226 (D.C.Cir.2008).
Our interpretation of the ADA not only is out of sync with the other circuits, but it also is wrong. Since Maddox, Congress has amended the Rehabilitation Act and the ADA several times, but the distinction between the causation standards used by the two laws persists. When Lewis filed this lawsuit in 2007, § 504 of the Rehabilitation Act provided: “No otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be ... subjected to discrimination.” 29 U.S.C. § 794(a) (emphasis added). At the time, Title I of the ADA provided: “No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual.” 42 U.S.C. § 12112(a) (emphasis added).
Nor is Title I of the ADA, which applies to private and public employers, the only section of the ADA that fails to use “solely.” Title II of the ADA, applicable to public services, says:
Subject to the provisions of this sub-chapter, no qualified individual with a disability shall, by reason o/such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
Id. § 12132 (emphasis added). The same is true of Title III (public accommodations), which applies to discrimination “on the basis of disability,” id. § 12182(a), and Title V (anti-retaliation), which bars discrimination “because” an individual opposed an employment practice, id. § 12203(a).
Later amendments to the ADA do not change things. Under the ADA Amendments Act of 2008, Title I now reads: “No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.” 42 U.S.C. § 12112(a) (emphasis added). Even though the amended law does not cover this lawsuit, it too says nothing about a sole-cause standard of liability. At no point, then or now, has the ADA used the “solely” because of formulation found in the Rehabilitation Act.
That leaves us with two laws with two distinct causation standards. One bars differential treatment “solely by reason of’ an individual’s disability; the other bars differential treatment “because of’ the individual’s disability. No matter the common history and shared goals of the two laws, they do not share the same text. Different words usually convey different meanings, and that is just the case here. A law establishing liability against employ *316 ers who discriminate “because of’ an employee’s disability does not require the employee to show that the disability was the “sole” cause of the adverse employment action.
Nor should it surprise anyone that Congress opted to give the ADA more regulatory bite. After seventeen years of experience with the Rehabilitation Act’s “solely” standard, Congress could well have decided that this limitation on employer liability should not be extended, particularly in a statute designed “to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.” 42 U.S.C. § 12101(b)(1). Whatever the reason for the difference between the standards, we cannot ignore the difference. Courts must refrain from “applying] rules applicable under one statute to a different statute without careful and critical examination,” Gross, 557 U.S. at 174, 129 S.Ct. 2343, an examination that in this instance reveals distinct causation tests. Making that distinction all the more glaring is the reality that Congress has amended the two statutes many times over the years but has never seen fit to join the causation standards. See id.
In contending that we should continue to add “solely” to the ADA causation standard, Humboldt relies on another provision of the ADA. “Except as otherwise provided in this chapter,” it says, “nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973....” 42 U.S.C. § 12201(a). Yet this provision does not merge the two causation standards. The first clause of the provision offers one reason. It contains a comparison caveat, warning the reader: “Except as otherwise provided in this chapter,” except in other words as provided in the text of the ADA — exactly the company’s problem here. The second clause provides another reason. It warns courts not to dilute the ADA standard of care relative to the Rehabilitation Act (not to construe it as “a lesser standard”). But respect for the ADA language- — reading it as “because of,” not as “solely because of’ — raises the employer’s standard of care in ADA cases. That is why it is the employee, not the employer, who asks us to respect the ADA language as it is. See Bragdon v. Abbott, 524 U.S. 624, 631-32, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (construing the no “lesser standard” language of the ADA to mean that no less protection be afforded by the ADA than by the Rehabilitation Act).
Humboldt insists that another provision of the ADA brings the two causation standards together. That subsection instructs “agencies with enforcement authority” under the ADA to “develop procedures to ensure that administrative complaints filed under [the ADA] and under the Rehabilitation Act of 1973 are dealt with in a manner that avoids duplication of effort and prevents imposition of inconsistent or conflicting standards for the same requirements under [the ADA] and the Rehabilitation Act of 1973.” 42 U.S.C. § 12117(b). Here, too, a relevant caveat appears, as the provision speaks only of similar treatment “for the same requirements” under the two statutes, a prerequisite that remains unfulfilled. The provision at any rate addresses only the enforcement of the laws by executive agencies and the enforcement procedures those agencies should develop. It does not speak to the standards dictated by the statutes themselves. Enforcement provisions generally do not alter substantive standards of care.
An appeal to legislative history does not alter this conclusion. A House Report on the ADA says that “[a]dministrative complaints filed under [the ADA] and the Re *317 habilitation Act should be dealt with in a manner to avoid duplication of efforts, and to prevent inconsistent or conflicting standards.” H.R.Rep. No. 101-485, pt. 3, at 49 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 472. Even if one measure of legislative purpose indicates a congressional desire to eliminate any “inconsistent ... standards” between the two statutes, that cannot trump a superior measure of legislative purpose — the text Congress enacted and the President signed into law, which refers to “inconsistent ... standards” with respect to “the same requirements.”
The sole-cause standard in the end is a creature of the Rehabilitation Act, and that is where we should leave it. The standard does not apply to claims under the ADA.
III.
In addition to urging the district court not to use the sole-cause standard, Lewis asked the court to instruct the jury that the ADA imposes liability if the claimant’s disability “was a motivating factor in the adverse employment decision.” R.57 at 5 (emphasis added). The words “a motivating factor” appear nowhere in the ADA but appear in another statute: Title VII. For the same reasons we have no license to import “solely” from the Rehabilitation Act into the ADA, we have no license to import “a motivating factor” from Title VII into the ADA.
Congress enacted Title VII as part of the Civil Rights Act of 1964. Pub.L. No. 88-352, § 701 et seq., 78 Stat. 241. As enacted, Title VII made it unlawful “for an employer ... to discriminate against any individual ... because of such individual’s race, color, religion, sex, or national origin.” Id. § 703 (emphasis added). In 1989, the Court considered how a because-of standard of causation worked in mixed-motives cases — cases where permissible and impermissible considerations played a role in the employer’s adverse employment action. Price Waterhouse v. Hopkins, 490 U.S. 228, 232, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The decision splintered four ways. As later characterized by the Court, the lowest common denominator of Price Waterhouse was the creation of a burden-shifting framework to determine causation in mixed-motive cases: “[I]f a Title VII plaintiff shows that discrimination was a ‘motivating’ or a ‘substantial’ factor in the employer’s action, the burden of persuasion should shift to the employer to show that it would have taken the same action regardless of that impermissible consideration.” Gross, 557 U.S. at 171, 129 S.Ct. 2343.
Two years after Price Waterhouse, Congress passed the Civil Rights Act of 1991, which added two relevant provisions to Title VII. The first says: “Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.” Pub.L. No. 102-166, § 107, 105 Stat. 1071, 1075 (1991) (codified at 42 U.S.C. § 2000e-2(m)) (emphasis added). The second provides limited remedies — declaratory relief, injunctive relief and attorney’s fees, but not damages or reinstatement — if the claimant meets the motivating factor standard but the employer shows it would have taken the same adverse employment action anyway. Id. (codified at 42 U.S.C. § 2000e-5(g)(2)(B)). The two provisions “responded to Price Waterhouse ” by adding new standards for mixed-motives cases to the text of Title VII. Desert Palace, Inc. v. Costa, 539 U.S. 90, 94, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).
*318 There are two ways to look at this history. One is that Price Waterhouse established the meaning of “because of’ for Title VII and other statutes with comparable causation standards, with Congress essentially ratifying Price Waterhouse: Namely, a “because of’ causation standard permits a plaintiff to show that the prohibited characteristic was “a motivating factor” of the adverse employment action, shifting the burden of persuasion to the employer to show that the characteristic was not a “but-for” cause of the action because it would have taken the same action anyway for legitimate reasons. The other is that by amending Title VII to provide recovery under a “motivating factor” theory, Congress made this theory available to Title VII claimants but not to claimants under other civil rights statutes given that Congress did not extend this framework to the other statutes.
Enter Gross v. FBL Financial Services, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). It adopted the second theory and refused to expand the reach of Title VII’s “motivating factor” amendments to another civil rights statute that contained a “because of’ standard of causation. At stake in Gross was whether to apply Title VII’s “motivating factor” standard for proving employment discrimination, 42 U.S.C. §§ 2000e-2(m) and 2000e5(g)(2)(B), to disputes under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). Although both statutes concern employment discrimination and both statutes share common goals, the Court reasoned that it would not casually “apply rules applicable under one statute to a different statute.” Gross, 557 U.S. at 174, 129 S.Ct. 2343. Unlike Title VII, Gross observed, the ADEA does not allow a plaintiff to prove discrimination merely by showing that her disability was a motivating factor behind her adverse employment action; the ADEA requires discrimination to be because of a disability, which means “but-for” causation. Id. at 177-78, 129 S.Ct. 2343. Making this difference in language particularly salient was the reality that Congress amended both statutes in 1991, but added the “motivating factor” language only to Title VII, not to the ADEA. Civil Rights Act of 1991, Pub.L. No. 102-166, § 107, 105 Stat. 1071; see also id. § 115; Gross, 557 U.S. at 174-75, 129 S.Ct. 2343.
This rationale applies with equal force to the ADA. The ADEA prohibits discrimination “because of [an] individual’s age,” 29 U.S.C. § 623(a)(1), and does “not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor” in the adverse employment decision. Gross, 557 U.S. at 174, 129 S.Ct. 2343. So too with the ADA, which makes unlawful “discrimination] ... because of” a person’s disability, 42 U.S.C. § 12112(a), (b)(1), and which says nothing about allowing a plaintiff to prevail because a disability was a “motivating factor” in the adverse employment decision.
Gross likewise reasoned that Congress “neglected to add [the motivating factor] provision to the ADEA when it amended Title VII ... even though it contemporaneously amended the ADEA in several ways.” 557 U.S. at 174, 129 S.Ct. 2343. The same is true of the ADA. Congress amended Title VII and the ADA through the Civil Rights Act of 1991, but added the “motivating factor” language only to Title VII. §§ 107, 109. “When Congress amends one statutory provision but not another,” Gross tells us, “it is presumed to have acted intentionally.” 557 U.S. at 174, 129 S.Ct. 2343.
Gross resolves this case. No matter the shared goals and methods of two laws, it explains that we should not apply the substantive causation standards of one anti- *319 discrimination statute to other anti-discrimination statutes when Congress uses distinct language to describe the two standards. Just as we erred by reading the “solely” language from the Rehabilitation Act into the ADA based on the shared purposes and histories of the two laws, swpra at 317, so we would err by reading the “motivating factor” language from Title VII into the ADA. Shared statutory purposes do not invariably lead to shared statutory texts, and in the end it is the text that matters. The one circuit to address the ADA/Title VII question after Gross has taken the same path. See Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 961-62 (7th Cir.2010).
Lewis insists she is not asking us to read anything into the text of the ADA that is not already there. A section of the ADA, she points out, cross-references Title VII:
The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of [Title VII] shall be the powers, remedies, and procedures this subchapter provides to the [EEOC], to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.
42 U.S.C. § 12117(a). But this cross-reference, which predates the 1991 amendments, accounts for the reality that the ADA does not have any enforcement provisions of its own. Id. That is why the provision has the label “Enforcement,” id., and why the Title VII cross-reference invoked by Lewis, 42 U.S.C. § 2000e-5, has the label “Enforcement provisions.” That also is why these enforcement mechanisms apply only to remedies for “discrimination on the basis of disability in violation of any provision of this chapter” (emphasis added), as opposed to violations of some other standard of care under another chapter. A disability claimant may not use the “powers, remedies, and procedures” of Title VII without establishing a violation of the ADA.
Confirming the point, the companion enforcement provision of this section of the ADA, labeled “Coordination,” directs the agencies with enforcement authority under the ADA and the Rehabilitation Act to create “procedures” that “prevent[ ] imposition of inconsistent or conflicting standards for the same requirements.” 42 U.S.C. § 12117(b). Congress took the same path with the coordination provision of Title II of the ADA, which incorporates “[t]he remedies, procedures, and rights” of section 505 of the Rehabilitation Act. 42 U.S.C. § 12133. Just as the provisions of the ADA incorporating the Rehabilitation Act’s enforcement provisions do not bring that Act’s standard of care into the ADA, neither does the provision of the ADA incorporating Title VII’s enforcement provisions.
There is another reason the incorporation of Title VII’s enforcement “powers, remedies, and procedures” into the ADA does not pull the “motivating factor” standard along with them. The part of Title VII that contains the “motivating factor” test — § 2000e-2 — is not included in the list of enforcement provisions identified in the ADA but appears (unsurprisingly) in a section of Title VII captioned “Unlawful employment practices.” That Congress did not incorporate § 2000e-2 into the ADA ought to give a court pause before doing so itself.
Keep looking, Lewis tells us. Although the ADA’s cross-references do not mention § 2000e-2, they do mention § 2000e-5, which itself contains a cross-reference to the “motivating factor” provision when it provides a limited set of remedies for Title *320 VII claimants who demonstrate motivating-factor discrimination. But this cross-cross-reference argument contains problems of its own. One is that § 2000e-5 does not direct judges to apply the substantive “motivating factor” standard from § 2000e-2(m); it permits them only to provide a remedy for plaintiffs who “prove[ ] a violation under section 2000e-2(m).” 42 U.S.C. § 2000e-5(g)(2)(B). No ADA plaintiffs will prevail under § 2000e-2(m), because that provision is a substantive standard that applies only to Title VII plaintiffs, not to ADA plaintiffs, as it speaks to “[impermissible consideration of race, color, religion, sex, or national origin” but says nothing about disability status. Nor does this reading make the ADA’s incorporation of § 2000e-5 meaningless. That subsection contains more than a dozen other provisions detailing procedures that remain applicable under the ADA. In incorporating a wide range of Title VII enforcement procedures and remedies into the ADA, it is hardly surprising that some of those provisions (in truth some parts of those provisions) apply by their terms only to Title VII eases.
Still another problem with this argument is that § 2000e-5(g)(2)(B) cross-references all of § 2000e-2(m). It applies the “motivating factor” standard of causation to “race, color, religion, sex, or national origin” discrimination in employment. That means an ADA claimant could win only by showing discrimination based on another protected ground. Even with a lower standard of causation, that is no benefit to claimants seeking relief premised on disability-based discrimination. Surely the ADA does not impose liability based on other forms of discrimination or, worse, make other forms of discrimination a precondition for establishing disability-based discrimination.
Legislative history does not alter this conclusion. Just as appeals to legislative history did not affect Gross’s decision to respect the differences between the text of the ADEA and the text of Title VII, see 557 U.S. at 186 n. 6, 129 S.Ct. 2343 (Stevens, J., dissenting), so they do not affect our decision. The 1990 Report from the House Committee on the Judiciary adds nothing to Lewis’s argument. In addressing the ADA’s incorporation of the “powers, remedies, and procedures” from five sections of Title VII, it said that “[a] bill is currently pending” that “would amend the powers, remedies and procedures of title VII.... Because of the cross-reference to title VII in [the ADA], any amendments to title VII that may be made in [that bill] ... would be fully applicable to the ADA.” H.R.Rep. No. 101-485(111), at 48, reprinted in 1990 U.S.C.C.A.N. 445 at 471. That bill became the Civil Rights Act of 1991. But any argument premised on this report merely reprises the cross-reference textual argument addressed above and suffers from the same problems identified above.
More helpful to Lewis is this line from the House Committee on the Judiciary Report on the 1991 Civil Rights Act: “[M]ixed motive cases involving disability under the ADA should be interpreted consistent with the prohibition against all intentional discrimination in Section 5 of this Act.” H.R.Rep. No. 102-40, pt. 2, at 4, reprinted in 1991 U.S.C.C.A.N. 694, 697. Yet this sentence does not import the motivating-factor standard into the ADA for several reasons. One, this section of the report relates to Title VII, not the ADA. Courts are justifiably skeptical of legislative history that purports to amend an earlier-enacted statute and that relates to an amendment to a different law. See O’Gilvie v. United States, 519 U.S. 79, 89, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996). Two, the legislation proposed by this report was not the legislation adopted by *321 Congress. See John L. Flynn, Note, Mixed-Motive Causation Under the ADA: Linked Statutes, Fuzzy Thinking, and Clear Statements, 83 Geo. L.J.2009, 2048-49 (1995) (proposed bill would have allowed plaintiffs to receive punitive and compensatory damages if they met motivating-factor standard); compare Civil Rights Act of 1991, Pub.L. No. 102-166, § 107, 105 Stat. 1071, 1075-76, with H.R. Rep. 102-40, pt. 2, at 715. Three, the same report says (just a few sentences earlier) that the Title VII standards should apply to the ADA and the ADEA. It says: “A number of other laws banning discrimination, including the [ADA] and the [ADEA] are modeled after, and have been interpreted in a manner consistent with, Title VII. The Committee intends that these other laws modeled after Title VII be interpreted consistently in a manner consistent with Title VII as amended by this Act.” H.R. Rep. 102-40, at 3. If this consistency objective did not alter the outcome in Gross with respect to the ADEA, it is difficult to see why it should make a difference here. The best indication of legislative purpose, Gross reminds us, is the meaning of the legislative text Congress enacts, not the meaning of a House Report describing that purpose — and especially not a House Report describing the purpose of language Congress never adopted.
That leaves one question: what standard should trial courts use in instructing juries in ADA cases? Gross points the way. The ADEA and the ADA bar discrimination “because of’ an employee’s age or disability, meaning that they prohibit discrimination that is a “ ‘but-for’ cause of the employer’s adverse decision.” 557 U.S. at 176, 129 S.Ct. 2343. The same standard applies to both laws. See Serwatka, 591 F.3d at 961-62.
A brief rejoinder to our colleagues’ partial dissents is in order. First, every salient argument in favor of importing the “motivating factor” burden-shifting test from Title VII into the “because of’ test of the ADA was made in Gross. For the same reasons the Supreme Court opted not to construe the “because of’ language in the ADEA to incorporate this distinct statutory test from Title VII, we must do the same here. No court of appeals has reached a contrary conclusion on this point after Gross. Second, the same tools of statutory construction that require us to resist importing the “solely” language from the Rehabilitation Act into the ADA require us to resist importing the “motivating factor” burden-shifting framework of Title VII into the ADA. The two inquiries are exceedingly similar. Third, none of the dissents’ lower-court citations holds up. One of them, Hunter v. Valley View Local Schools, 579 F.3d 688 (6th Cir.2009), concerned the application of a “motivating factor” test to the Family Medical Leave Act, 29 U.S.C. § 2615(a)(2). There, however, a relevant administrative regulation, previously upheld by our court, required that outcome. Hunter, 579 F.3d at 692. The same is not remotely true here. Another one, Smith v. Xerox Corp., 602 F.3d 320, 329-30 (5th Cir.2010), concerned the use of a “motivating factor” test in a different provision of Title VII. There, no importation of a test from one statute into another was at issue, which is one reason the Fifth Circuit distinguished the Seventh Circuit’s decision in Serwatka, as opposed to disagreeing with it, as the dissent must do here, compare id. at 329 n. 28 with infra at 330-31 n. 5. A final case, Pinkerton v. Spellings, 529 F.3d 513 (5th Cir. 2008), concerned the issue at hand. There, however, the Fifth Circuit reviewed the issue before Gross, which is to say it reviewed the issue without the guidance provided by the Supreme Court and without *322 considering the relevant issues joined here.
IV.
For these reasons, we reverse the judgment against Lewis and remand for a new trial.