NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0035n.06

No. 19-1328

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Jan 22, 2020<br>DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| LOU CHINNA BENT-CRUMBLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| MEGAN J. BRENNAN, Postmaster General of the United States Postal Service, | ) | |
| | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, STRANCH, and NALBANDIAN, Circuit Judges.

**PER CURIAM.** Plaintiff-Appellant Lou Chinna Bent-Crumbley was a probationary letter carrier for the Postal Service when she injured her foot and ankle on the job, resulting in a month of medical leave. While on leave, she received poor marks in a performance review that covered her first 30 days, generally before her injury. After returning to work, she did not wear a seat belt on two occasions and delivered mail out of order in violation of instructions to her, all resulting in warnings by her supervisors. She then received unacceptable ratings in another performance review and her supervisors filed paperwork recommending her termination. She was terminated upon approval of the paperwork, on the same day that she notified her supervisor that she needed further medical attention for her injury.

Bent-Crumbley filed a complaint against the Postal Service for discrimination in violation of the Rehabilitation Act. The district court found that she did not establish a prima facie case

under the indirect evidence framework for disability discrimination and granted summary judgment in favor of the Postal Service. Because Bent-Crumbley cannot establish that her termination was based solely on her disability as required by the Rehabilitation Act, we **AFFIRM**.

## I.  BACKGROUND

Bent-Crumbley was a letter carrier with the United States Postal Service at the Inkster, Michigan office. During the relevant times, Bent-Crumbley was on a 90-day probationary period that began when she was hired full time on November 29, 2014 and was set to end on February 26, 2015. She was supervised by Tim Pendleton, the first line supervisor, and Christopher Baker, the second line supervisor and Officer in Charge at the Inkster Post Office.

On December 26, 2014, Bent-Crumbley suffered an ankle and foot injury while delivering mail, resulting in medical leave from December 26, 2014 to January 23, 2015. On around January 7, 2015, Bent-Crumbley brought medical documentation to the post office, and Baker met with her for a 30-day performance review of the performance period that covered mostly the time before her injury. Bent-Crumbley received "unacceptable" ratings in a number of areas and "not observed" ratings in other areas.

Bent-Crumbley returned to work on January 23 without any restrictions, and on January 27, Baker noticed that she was improperly working without a seat belt on and instructed her to wear a seat belt. Two days later, Baker and Pendleton again observed Bent-Crumbley working without a seat belt after stopping her for delivering mail out of sequence against instructions. Baker gave Bent-Crumbley another warning and instruction to wear a seat belt and to complete her assignment in accordance with her route. On February 3, with Baker's approval, Pendleton completed an administrative action request to the Labor Relations Department to terminate Bent-Crumbley for failure to follow instructions, unsafe practices, and failure to be in regular

attendance, citing in the comments the seat belt incidents, delivering mail out of order, and prior unscheduled absences during her probationary period. Though Baker had the authority to terminate Bent-Crumbley, he noted that it was customary to get the approval and recommendation from the Labor Relations Department before doing so.

On February 5, Baker met with Bent-Crumbley and her union representative Phil Ashford for a 60-day performance review and gave Bent-Crumbley "unacceptable" ratings in all areas. He did not indicate that she would be terminated. The next day, Bent-Crumbley reported to work and told Baker that her ankle was bothering her again, but that she would still go on her route and have it checked later. Baker testified that the Labor Relations Department approved the recommendation for her termination after she left for her route that day. He told Ashford and sent for Bent-Crumbley to return. Ashford testified that Baker told him, "I'm going to have to let her go. She's going to cost the Post Office too much money," and that he made a similar comment during the 60-day review the day before. When Bent-Crumbley returned, Baker and Pendleton met with her in Ashford's presence and terminated her for "Failure to Adhere to Safety Rules and Regulations," referencing the two instances when they observed her working without wearing a seat belt.

Bent-Crumbley filed an Equal Employment Opportunity complaint; an Administrative Law Judge (ALJ) concluded that while her termination was motivated in part by her disability, the Postal Service proved by clear and convincing evidence that it would have taken the same action regardless of her disability. On June 5, 2017, Bent-Crumbley filed a complaint against the Postmaster General under the Americans with Disabilities Act (ADA) and the Rehabilitation Act, alleging that her termination was the result of her ankle and foot injury. The Postal Service filed for summary judgment. Bent-Crumbley argued that Baker's decision to terminate her was based

on the recurrence of her injury on February 6 and sought to rely on the ALJ's finding that her termination was motivated in part by disability discrimination. Because she was challenging the administrative decision in the district court, however, she cannot rely on the ALJ's findings of fact. The district court determined independently that Bent-Crumbley did not prove the elements of her prima facie case under the *McDonnell Douglas* burden-shifting framework for establishing discrimination claims. The district court granted summary judgment in favor of the Postal Service, and Bent-Crumbley now appeals.

## II.    ANALYSIS

We review de novo the district court's grant of summary judgment. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). Summary judgment is appropriate if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). "[W]e may affirm [summary judgment] on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

The Rehabilitation Act, a parallel statute of the ADA, prohibits the United States Postal Service, federal agencies, and other programs receiving federal funding from discriminating against any qualified individual with a disability. 29 U.S.C. § 794(a). The Act is the "exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). It specifically incorporates the standards applied under the ADA to determine violations, 29 U.S.C. § 794(d), and courts look to guidance under the ADA to determine if a federal employee has been discriminated against because of a disability, *Mahon v. Crowell*, 295 F.3d 585, 588–89 (6th Cir. 2002).

While the ADA and the Rehabilitation Act are analytically similar and contain the same protections against disability discrimination, they are not identical. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–17 (6th Cir. 2012) (en banc). A plaintiff under the ADA needs to show that disability was the "but for" causation of the employer's adverse action. *Id.* at 321. On the other hand, the Rehabilitation Act requires that individuals show that the employer's actions were taken "solely by reason of her or his disability." 29 U.S.C. § 794(a). "The sole-cause standard . . . is a creature of the Rehabilitation Act, and . . . does not apply to claims under the ADA." *Lewis*, 681 F.3d at 317. Taken together, this circuit has clarified that a plaintiff claiming disability discrimination under the Rehabilitation Act must show 1) that she has a disability, 2) that she is otherwise qualified to perform the job requirements with or without reasonable accommodation, and 3) that the adverse action was taken *solely* by reason of the disability. *See Jones*, 488 F.3d at 403 (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)[1]).

A plaintiff may establish a claim for disability discrimination under the Rehabilitation Act or the ADA in one of two ways: "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision," or indirect evidence, under which the familiar *McDonnell Douglas* burden-shifting framework applies. *Monette*, 90 F.3d at 1178. If a plaintiff has direct evidence of discrimination, the "burden shifting approach is unnecessary because the issue of the employer's intent, the issue for which *McDonnell Douglas* was designed, has been admitted by the defendant . . . and the plaintiff has direct evidence of discrimination on the basis of his or her disability." *Ferrari*, 826 F.3d at 892 (alteration in original) (quoting *Monette*, 90 F.3d at 1182). A plaintiff can establish a

---

[1] *Monette* was subsequently abrogated in part by *Lewis*, which held that an ADA plaintiff must show that he suffered an adverse employment action "because of" rather than "solely by reason of" disability. The *Lewis* court, however, left *Monette*'s analysis under the Rehabilitation Act intact, and plaintiffs under the Rehabilitation Act must still show adverse action "solely by reason of" the disability.

prima facie case under the direct evidence framework by bringing evidence of discriminatory intent, such as a facially discriminatory employment policy or express statements of desires to remove employees. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Direct evidence "does not require the fact finder to draw any inferences" to conclude "that the disability was at least a motivating factor." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018) (citation omitted).

The threshold inquiry for disability discrimination is whether the plaintiff is disabled. The definition of disability under the Rehabilitation Act is "a physical or mental impairment that constitutes or results in a substantial impediment to employment." 29 U.S.C. § 705(9). The Rehabilitation Act also incorporates the definition of disability under the ADA, under which a disability is "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1)(A)–(C); *see also Mahon*, 295 F.3d at 589. A plaintiff showing a disability and direct evidence of discrimination based on that disability must also show she is otherwise qualified to do the job with or without accommodation and that "the adverse employment decision was based *solely* on [her] disability." *Monette*, 90 F.3d at 1180–81.

The district court analyzed the present case under the indirect evidence test alone, finding that Bent-Crumbley did not establish a prima facie case for disability discrimination. On appeal, Bent-Crumbley argues that there was direct evidence of disability discrimination and challenges only the district court's finding that she was not disabled. Bent-Crumbley argues that she was disabled because her ankle and foot injury was a physical impairment that substantially limited the major life activity of walking, and in the alternative, that the Postal Service regarded her as disabled. As direct evidence of disability discrimination, Bent-Crumbley relies on a statement

Baker made to Ashford prior to notifying her of her termination: that he was "going to let her go" because she was going to "cost the Post Office too much money."

Bent-Crumbley's proof that she raised genuine issues of material fact on her disability and the existence of direct evidence of disability discrimination are not dispositive here because she cannot carry her burden to show the other essential elements of a Rehabilitation Act claim.

As to the second element of the test, Bent-Crumbley does not argue that she is "otherwise qualified" for the position on appeal, with or without reasonable accommodation, *see Jones*, 488 F.3d at 403, and we consider it waived, *see Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[Plaintiff's] failure to raise an argument in his appellate brief constitutes a waiver of the argument on appeal.").

As to the third element, Bent-Crumbley makes no argument on appeal that she was terminated solely by reason of her disability and has conceded the existence of other reasons for her termination. In the administrative action request to terminate Bent-Crumbley, the Postal Service cited two seat-belt-safety violations, the failure to follow instructions in the mail-delivery order, and prior attendance issues, though her official notice of separation noted only the two seat-belt violations. Bent-Crumbley does not dispute these facts, or that she met with Baker twice to discuss her 30-day and 60-day performance reviews and was given "unacceptable" ratings in almost all performance categories. Because she was a probationary employee, the Postal Service was within its authority to terminate Bent-Crumbley for these violations.

The key relevant question for Bent-Crumbley's Rehabilitation Act claim is whether there are genuine issues of material fact that her termination was motivated solely by the impermissible discriminatory motive. On the record before us, we cannot find under either the direct evidence or indirect evidence framework that disputes of material fact exist as to whether disability

discrimination was the *sole* motivation for her discharge. The grant of summary judgment to the Postal Service was therefore appropriate.

### III.    CONCLUSION

Because Bent-Crumbley cannot establish the elements of a Rehabilitation Act claim, we **AFFIRM** the district court's order granting defendant's motion for summary judgment.